FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 3 0 2019 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ARRON BALLINGER

     Petitioner, pro se

 -against-

CHRISTOPHER MILLER

     Respondent.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
16-CV-3856 (CBA)

**AMON, United States District Judge:**

Arron Ballinger, proceeding pro se, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He seeks to vacate his New York state conviction, following a bench trial, for second-degree murder and second-degree criminal possession of a weapon, arguing that his waiver of his right to a jury trial was not knowing, intelligent, and voluntary because the trial court failed to explain that Ballinger's rationale for executing the waiver was flawed. (See D.E. # 1 ("Pet.") at 4.) For the reasons set forth below, Ballinger's petition is denied.

## BACKGROUND

Ballinger was indicted in Kings County, New York, for one count of murder in the second degree and two counts of criminal possession of a weapon in the second degree, for his killing of Samuel Schley. Just before trial, Ballinger's counsel informed the trial court he had conferred with Ballinger over the course of the weekend before trial, discussing trial strategy, and that as a result Ballinger desired to waive his right to a jury trial and proceed instead with a bench trial. (D.E. # 7-1 (Tr. Rec.) at 5–6.)[1] Counsel explained that, although they would concede that Ballinger had shot the victim and caused his death, the defense intended to argue that Ballinger was incorrectly indicted on charges of intentional homicide when he should have been charged with

---

[1] Pagination is based on the PDF page number, not the page number of each individual transcript within the Exhibit.

1

depraved indifference murder and therefore that the facts that would be adduced at trial would not support the murder charge. (Id. at 10, 66–68.) Accordingly, because the defense planned to argue that Ballinger had been charged with the wrong crime, which was "primarily a question of law," counsel explained that the defense believed that the trial court "would more fairly judge and decide this issue than a jury." (Id.) Noting repeatedly that the right to trial by jury is an "important," "significant," "serious," and "very monumental right," the trial court insisted that it must ensure that Ballinger "wis[h]es to [waive the jury trial] and he understands the nature of what he's about to do." (Id. at 7–11.) In particular, the trial court stressed that it was "very important for Mr. Ballinger to understand [that] normally in a jury trial in a criminal case . . . [t]he judge decides all the questions of law" and "[t]he jury decides the facts," but in a bench trial, "you place all of those issues into the judge's hand" and give them "them total . . . rein" to decide both law and fact. (Id. at 10–11.) The trial court further made clear that, notwithstanding the defense's strategy and belief that the court would be more receptive to their argument of legal insufficiency, "there's no guarantee" that the court would agree and "no way of knowing what the outcome is going to be because you have placed all of that power into the hands of a judge." (Id. at 11.)

The trial court continued that "quite frankly . . . there are benefits to having a jury decide the questions of fact and judge decide the law" and therefore that before allowing Ballinger to give up that "monumental and significantly important right," the court needed to be "satisfied that you understand the consequences of such a waiver because it is that important." (Id. at 11–12.) For that reason, the court cautioned Ballinger that a waiver is "not something to be entered into lightly" and that he "should not go through with it" if he did not understand the "significant Constitutional right" he was waiving. (Id. at 12–13.) The court then permitted defense counsel to take a recess to further discuss the matter with Ballinger; at the end of the recess, counsel represented—and

2

Ballinger confirmed—that counsel had impressed upon him that the choice to waive his right to a jury trial was his alone. (Id. at 13–14.)

The trial court then began to examine Ballinger under oath to determine whether Ballinger was voluntarily, knowingly, and intelligently waiving his right to a jury trial. (Id. at 14–16.) The court explained that once Ballinger waives the right to a jury, that decision is "final and binding" and asked Ballinger whether he nonetheless desired to waive the right. (Id. at 15–16.) Ballinger replied that "I fully understand what's going on. I'd like to waive my rights for a jury trial, for a bench trial." (Id. at 16.) The trial court thereafter extensively questioned Ballinger concerning his choice, indicating that he could pause to consult with his attorney before answering any questions. (Id. at 16–32.) Ballinger indicated that he was 21 years old; could read, write, speak, and understand English; had obtained his GED; had not consumed any drugs, alcohol, or medication in the previous 24 hours; had never been treated for a mental illness or disorder; had no mental or physical impairment that would prevent him from understanding the proceedings; and that he had not been threatened, forced, or coerced into waiving his right to trial by jury. (Id. at 18–20.) The trial court confirmed that Ballinger understood that the right to a trial by jury meant that Ballinger was entitled to have "twelve jurors determine the issues of guilt or nonguilt" and that by waiving that right, he was electing instead to have the court itself determine both. (Id. at 21.) The court stressed that "it may be to [Ballinger's] advantage to have your case tried by twelve individuals" rather than the judge alone and that if Ballinger tried his case before a jury he would not be convicted unless all twelve agreed to his guilt, "which may be a benefit to you." (Id. at 21–22.) Ballinger replied that he understood these features of the jury trial. (Id. at 22.) In response to the trial court's request that Ballinger explain his decision to waive his right to a jury trial, Ballinger replied that "I believe that you know the law better than twelve jurors do." (Id. at 22.) The court

reiterated that the jury decides all issues of fact and has the responsibility of determining whether the People have borne their burden to prove all of the facts supporting the indictment beyond a reasonable doubt—a "valuable right"—but that the court alone would "decide all of the facts, as well as apply the law," if Ballinger waived the jury trial, and the court warned against "that kind of power concentrated into one hand, that being the hand of the Court." (Id. at 23.) Ballinger indicated that he understood and still wished to waive his right. (Id.)

The trial court then repeated its earlier admonition that there was "no guarantee as to what the decision may be" and that the court was not obliged to accept Ballinger's attorney's legal argument merely because the case was a bench trial. (Id. at 23–25.) The court therefore again insisted that if Ballinger had any "kinds of nagging thoughts or unresolved issues," he should resolve them before making any decision, because he could not revoke his waiver once it is made. (Id. at 26–27.) After finally checking once again that Ballinger had discussed the issue with counsel and was satisfied with the extent and nature of counsel's explanations, (id. at 27), the court had Ballinger sign a written waiver form, confirming that Ballinger understood its contents, signed it freely, and that it remained his desire to waive his right to a jury trial, (id. at 30.) After Ballinger again answered affirmatively, the court finally accepted his waiver. (Id. at 30–32.)

The next morning, prior to beginning trial, the trial court undertook "one last inquiry" to confirm that Ballinger really wished to waive his right to trial by jury. (Id. at 53.) Ballinger was sworn in, and the court inquired whether, having had the chance to consider his decision overnight, Ballinger still desired to proceed with a bench trial "meaning that [he would] have the Court decide both the law and the facts of this case," to which Ballinger replied "Yes, your Honor." (Id. at 54.) The court then again explained that Ballinger was facing the possibility of 25 years to life in prison, and that there was no guarantee regarding what the court would find the facts to be. (Id. at 55.)

4

Ballinger confirmed that he understood this, had not been promised that any particular outcome would occur as a result of the waiver, and that he wished to "proceed without a jury." (Id. at 54–55.)

Upon this final confirmation, the court commenced the bench trial. At the conclusion of the trial, the court determined that there was "no reasonable view of the evidence supporting the notion that at the time of the shooting the defendant operated with a depraved indifference to human life," but rather that "the People have . . . proven beyond a reasonable doubt that the defendant intentionally killed" the victim. (Id. at 634–35.) The court accordingly found Ballinger guilty of murder in the second degree and two counts of criminal possession of a weapon in the second degree. (Id. at 635.) Prior to sentencing, Ballinger admitted to and the court took notice of Ballinger's prior 2005 conviction in Connecticut for burglary in the third degree, which the court determined was a violent felony and the basis for finding Ballinger a "second violent felony offender." (Id. at 640–42.) The court then imposed a concurrent sentence of twenty-two years to life on the murder count and fifteen years on the criminal possession of a weapon counts, followed by five years post-release supervision. (Id. at 658–60.)

Ballinger appealed, raising two contentions. First, he argued that the trial court's allocution was insufficient to render Ballinger's waiver of the right to a jury trial knowing, intelligent, and voluntary because the trial court failed to explain to him that the defense's trial strategy of arguing insufficiency of the evidence could have been made directly to the court via a motion for a trial order of dismissal, N.Y. Crim. Proc. Law § 290.10, even had Ballinger maintained his right to a jury trial and accordingly that Ballinger did not benefit from waiving his right. (D.E. # 7-2 ("App. Rec.") at 13-16.) Second, Ballinger asserted that he was improperly sentenced as a second violent felony offender based on the Connecticut conviction for burglary in the third degree, the elements

of which were not equivalent to that same felony under New York law and thus which could not serve as a predicate offense. (Id. 19–21.)

The Appellate Division, Second Department affirmed the judgment but, given that "the out-of-state crime of which the defendant was convicted would not constitute a felony in New York for the purposes of enhanced sentencing," vacated Ballinger's adjudication as a second violent offender and the two counts of criminal possession of a weapon in the second degree. (Id. at 69–70.) Because the Second Department was unable to determine from the record whether the trial court imposed a longer sentence on the murder count based on its "mistaken belief that the defendant had previously been convicted of a violent felony," Ballinger's sentence on the murder charge was vacated as well and remitted to the trial court for resentencing. (Id. at 70.) The Second Department rejected Ballinger's arguments regarding his waiver of the right to trial by jury, however, finding them "unpreserved for appellate review" and that "in any event, the record establishes that the defendant's waiver was knowing, intelligent, and voluntary." (Id. at 69.) The Court of Appeals denied leave to appeal. People v. Ballinger, 20 N.Y.3d 985 (2012). On January 10, 2013, Ballinger was resentenced as a first-time violent offender. (App. Rec. at 121). The trial court explained that the Connecticut conviction "did not impact the Court's sentence in any way," (id. at 120-21), and so resentenced Ballinger to the same concurrent sentences of twenty-two years to life on the murder count and fifteen years on the weapons counts, with five years' post-release supervision, (id. at 121). The Second Department affirmed his sentence, and on April 2, 2015, the Court of Appeals denied leave to appeal. See People v. Ballinger, 125 A.D.3d 784, leave to appeal denied, 25 N.Y.3d 987 (2015). On July 1, 2016, Ballinger timely filed the instant petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, asserting that his waiver of his right to a jury trial was inadequate. (Pet. at 4.) For the reasons set forth below, the petition is denied.

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a state prisoner may petition for "a writ of habeas corpus . . . only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where the petitioner seeks review of a claim "adjudicated on the merits in State court proceedings," AEDPA "sharply limits the circumstances in which a federal court may issue a writ of habeas corpus," Johnson v. Williams, 568 U.S. 289, 298 (2013), and "imposes a highly deferential" standard of review, Jones v. Murphy, 694 F.3d 225, 234 (2d Cir. 2012) (citing Hardy v. Cross, 132 S. Ct. 490, 491 (2011) (per curiam)); see also 28 U.S.C. § 2254(d). A state court is presumed to have adjudicated a federal claim on the merits when the claim "has been presented to a state court and the state court has denied relief . . . in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 562 U.S. 86, 99 (2011).

A district court applying AEDPA deference may grant an application for a writ of habeas corpus only where the state proceedings resulted in a decision that (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2); see also Williams v. Taylor, 529 U.S. 362, 405–06 (2000); Evans v. Fischer, 712 F.3d 125, 132–33 (2d Cir. 2013). "'[C]learly established Federal law' refers to holdings, and not dicta, of cases decided by the Supreme Court, as opposed to lower federal courts." Fischer, 712 F.3d at 133 (citing Williams, 529 U.S. at 412). A state court's ruling on the merits is "contrary to" a clearly established Supreme Court holding if it "arrives at a conclusion opposite to that reached by th[e] Court on a question of law or . . . decides a case differently than th[e] Court has on a set of

7

materially indistinguishable facts." Williams, 529 U.S. at 412–13. An "unreasonable application" of clearly established Supreme Court precedent occurs when "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "An application of law is 'unreasonable' only if it involves '[s]ome increment of incorrectness beyond error.'" Fischer, 712 F.3d at 133 (quoting Overton v. Newton, 295 F.3d 270, 277 (2d Cir. 2002)); see also Harrington v. Richter, 562 U.S. 86, 101 (2011) (holding that if "'fairminded jurists could disagree' on the correctness of the state court's decision," that decision is not unreasonable (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004))); Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (noting that whether a state court's determination was unreasonable is "a substantially higher threshold" than whether that determination was incorrect).

## DISCUSSION

Ballinger reasserts the argument concerning the validity of his waiver of the right to a trial by jury that he unsuccessfully raised before the Appellate Division, Second Department. Specifically, Ballinger contends that the trial court's colloquy was insufficient to ensure that he "'understood' the important right he was giving up" because the trial court did not "dispel petitioner of the notion" that a waiver of his right to a jury trial "would somehow benefit him," when in reality Ballinger could have made the exact legal insufficiency argument to the judge, even had the case been tried to a jury. (D.E. # 9 ("Pet. Reply") at 6–7.) Having heard from Ballinger that his reason for waiving his right was his belief that the judge "know[s] the law better than twelve jurors do," (Tr. Rec. at 22), Ballinger claims that the trial court should have explained that legal argumentation regarding the sufficiency of the evidence could be made to the judge even during a jury trial, (Pet. Reply at 8). This "misconception" that waiving his right to a jury trial

would afford him an opportunity that he in fact already possessed, argues Ballinger, renders his waiver unintelligent and thus invalid. (Id. at 8, 11–12.) Ballinger's claim, however, is procedurally defaulted and in any event lacks merit.

**I. Procedural Bar**

On direct appeal, the Second Department denied this waiver claim as unpreserved because Ballinger failed to comply with New York's contemporaneous objection rule, (App. Rec. at 69 (citing N.Y. Crim. Proc. Law § 470.05(2)), which requires a party to "protest" the asserted error before the trial court "at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same," N.Y. Crim. Proc. Law § 470.05(2).

This basis for rejecting Ballinger's claim is "a state law ground that is independent of the federal question and adequate to support the judgment" and which federal courts have no jurisdiction to review. Coleman v. Thompson, 501 U.S. 722, 729 (1991); see also, e.g., Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) ("A federal habeas court lacks jurisdiction to evaluate questions of federal law decided by a state court where the state court judgment" rests on independent and adequate state law grounds). This is true whether the state law ground is substantive or procedural and regardless of whether the state law ground was the state court's sole rationale or an alternative holding. Coleman, 501 U.S. at 729; Harris v. Reed, 489 U.S. 255, 264 n.10 (1989); Travis, 414 F.3d at 294. New York's contemporaneous objection rule is certainly a ground that is "independent" of the federal question concerning the adequacy of a waiver under the Sixth Amendment. See, e.g., Cotto v. Herbert, 331 F.3d 217, 239 (2d Cir. 2003). For a state ground to be "adequate," it must be "['] firmly established and regularly followed by the state in question' in the specific circumstances presented in the instant case." Murden v. Artuz, 497 F.3d 178, 192 (2d Cir. 2007) (quoting Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006)). Courts

9

in this Circuit have specifically found that the practice of finding a claim unpreserved as a result of a defendant's failure to abide by New York's contemporaneous objection rule in the context of their waiver of the right to a jury trial is firmly established and regularly followed, and accordingly constitutes an adequate state ground for denying an appeal. See, e.g., Silva v. Graham, No. 13-CV-3314 (MKB)(LB), 2014 WL 12654907, at *2–3 (E.D.N.Y. Aug. 4, 2014), report and recommendation adopted, 2017 WL 435774 (E.D.N.Y. Feb. 1, 2017) (collecting cases and finding that "[t]he contemporaneous objection rule is firmly established and regularly followed where, as here, petitioner did not to object to the procedure followed when the trial court approved his waiver of a trial by jury"); Karimzada v. Cunningham, No. 09-CV-3317 (JG), 2010 WL 597947, at *3 (E.D.N.Y. Feb. 17, 2010) (considering the "guideposts" identified by the Second Circuit in Cotto to determine the adequacy of a procedural default for failure to make a contemporaneous objection, and noting that "even imperfect compliance with the contemporaneous objection requirement would have alerted the trial judge to [petitioner's] belief that the inquiry into the validity of his waiver was insufficient"); People v. Johnson, 51 N.Y.2d 986, 987 (1980) (requiring objections "to the procedure followed in approving the appellant's waiver of jury trial [to be] preserved for review" in accordance with § 470.05(2)). The claim is therefore procedurally defaulted and the petition is denied for that reason alone.[2]

---

[2] Although Ballinger could obtain federal habeas review of his procedurally defaulted claim by showing either "cause for the default and prejudice" or that "failure to consider the claims will result in a miscarriage of justice (i.e., the petitioner is actually innocent)," he argues neither. Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001) (citing Coleman, 501 U.S. at 748–50). Indeed, Ballinger has throughout conceded that he is not innocent of the victim's killing, despite his assertion that the killing was not done with the requisite intent for second degree murder. See Bousley v. United States, 523 U.S. 614, 623 (1998) ("'[A]ctual innocence' means factual innocence, not mere legal insufficiency.").

## II. Merits

Contrary to Ballinger's assertion, the record clearly indicates that his waiver of his right to a jury trial was "knowing, intelligent, and voluntary." United States v. Carmenate, 544 F.3d 105, 108 (2d Cir. 2008).

A criminal defendant's waiver of a constitutional right is knowing and intelligent if it is "done with sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 U.S. 742, 748 (1970) (discussing this standard in the context of a guilty plea, which inherently includes a waiver of the right to a jury trial). As the Supreme Court has further explained, "the law ordinarily considers a waiver [of a constitutional right] knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply <u>in general</u> in the circumstances—even though the defendant may not know the <u>specific detailed</u> consequences of invoking it." United States v. Ruiz, 536 U.S. 622, 629 (2002) (emphasis in original); see also Patterson v. Illinois, 487 U.S. 285, 294 (1988) ("If petitioner nonetheless lacked 'a full and complete appreciation of all of the consequences flowing' from his waiver, it does not defeat the State's showing that the information it provided to him satisfied the constitutional minimum." (quoting Oregon v. Elstad, 470 U.S. 298, 316-17 (1985))); cf. Ruiz, 536 U.S. at 630 (noting, in the context of a guilty plea, that "the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor"). The voluntariness of the waiver "can be determined only by considering all of the relevant circumstances surrounding it." Brady, 397 U.S. at 749.

The Second Circuit has also "strongly encourage[d]" that district courts engage in an on-the-record colloquy with defendants to ensure that they understand the "scope and contours of the right to trial by jury and the consequences of a waiver," which "at a minimum" should inform the defendant "that a jury is composed of twelve members of the community, that the defendant may participate in the selection of the jurors, that the jury's verdict must be unanimous, and that a judge alone will decide guilt or innocence if the defendant waives the right to a jury trial." Carmenate, 544 F.3d at 108–09 (internal quotation marks omitted) (quoting Marone v. United States, 10 F.3d 65, 68 (2d Cir. 1993)). But the Second Circuit has also made clear that those recommendations "are neither mandatory nor dispositive of a defendant's understanding of the waiver," and that a court is "not constitutionally required to conduct an on the record colloquy with a defendant prior to a waiver of the right to a jury trial." Id. at 108 (internal quotation marks and citation omitted). Rather, the court must evaluate the defendant's waiver "under all the circumstances of the case to ensure that it is knowing, voluntary, and intelligent." Id. Indeed, the Second Circuit has held that a defendant's failure to receive explicit instruction on two of these jury features—the number of jurors and the requirement of a unanimous verdict—did not, under all of the circumstances, render his subsequent waiver unknowing or unintelligent. Id. at 108–09.

Here, based on the transcript, the trial court thoroughly explained to Ballinger these fundamental characteristics of a jury, and there is little doubt that Ballinger fully understood the protections he was giving up by waiving his right to a jury trial. In addition to the trial court's repeated admonitions as to the benefits of a jury trial and the consequences of relinquishing this right, the record reflects that the trial court specifically informed Ballinger that a jury is composed of twelve members whose verdict must be unanimous, and that if he waived his right to a jury trial, the judge alone would decide his guilt or innocence. Although it is true that the record does not

reflect that Ballinger was informed that he could have a role in selecting the jury or that they would be members of the community, this fact alone, as aforementioned, is insufficient to render Ballinger's waiver invalid. See Carmenate, 544 F.3d at 108–09; see also U.S. ex rel. Williams v. DeRobertis, 715 F.2d 1174, 1177 (7th Cir. 1983) (holding that "an accused's ignorance" of "his right to participate in the selection of his jury and his right to be convicted only upon a substantial majority vote of the jurors . . . does not render his jury trial waiver and subsequent bench trial conviction void as a matter of constitutional law"). Ballinger also does not suggest that this information played any role in his decision to waive his right to a jury trial.

Ballinger's assertion that his waiver was inadequate thus fails under any standard, let alone the more exacting standard set out under AEDPA. Pursuant to § 2254(d), a court may not grant a habeas petition unless the challenged decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." As noted above, however, the Supreme Court has never required a trial court to engage in an allocution before accepting a defendant's waiver of their right to a trial by jury. All that the Supreme Court has required is that the waiver be knowing, intelligent, and voluntary. See, e.g., Ruiz, 536 U.S. at 629. Considering the lengths to which the trial court went to explain the protections assured by the right to a jury trial, the gravity of that right, how those protections might benefit Ballinger, and the consequences of Ballinger's waiver of those protections, as well as the court's repeated and exhaustive confirmations that Ballinger understood the right that he proposed to relinquish and that it was his personal desire to nevertheless forgo those rights, there is no doubt that the trial court's acceptance of Ballinger's waiver was neither contrary to, nor an unreasonable application of, the Supreme Court's standard for accepting such a waiver.

13

## CONCLUSION

For the reasons set forth above, Ballinger's petition is dismissed. Because Ballinger has failed to make a "substantial showing of the denial of a constitutional right," a Certificate of Appealability shall not issue. 28 U.S.C. § 2253(c). The Clerk of Court is respectfully directed to enter judgment accordingly and close the case.

SO ORDERED.

Dated: September 30, 2019
      Brooklyn, New York

s/Carol Bagley Amon
Carol Bagley Amon
United States District Judge